**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Valerie Yeager, et al., | No. CV-22-00574-PHX-DWL (ESW) |
| Plaintiffs, | **ORDER** |
| v. | |
| State of Arizona, et al., | |
| Defendants. | |

Pending before the Court is the State's motion for "reconsideration" of Magistrate Judge Willett's order summarily granting Plaintiffs' application for attorneys' fees. (Doc. 94.) For the following reasons, the motion is granted.

## BACKGROUND

This is a civil rights action arising from the death of Christopher Yeager, who died while an inmate in the Arizona state prison complex. (Doc. 13.) After the action was removed from state court, it was referred to Judge Willett for all pretrial purposes pursuant to Local Rules 3.7(e) and 72.1(c). (Doc. 2.)

On October 10, 2022, Plaintiffs filed a motion to compel certain Defendants to serve an initial disclosure statement and to compel a particular defendant, the State of Arizona, to respond to Plaintiffs' requests for production. (Doc. 42.)

On October 25, 2022, after no response was filed, Plaintiffs filed a motion requesting that the motion to compel be summarily granted. (Doc. 51.)

On October 25, 2022, one defendant, Defendant Mendoza, filed a response to the

1 motion to compel in which he agreed to submit his initial disclosure by October 28, 2022. (Doc. 52.)

On October 27, 2022, another defendant, Defendant Hurst, filed a response setting forth the same agreement. (Doc. 55.)

On October 31, 2022, another defendant, Defendant Bromund, filed a response to the motion to compel in which he agreed to submit his initial disclosure by November 4, 2022. (Doc. 59.)

On November 7, 2022, Magistrate Judge Willett issued an order stating that, because the responses filed at Docs. 52, 55, and 59 "indicat[ed] that the parties have agreed to a deadline for production of Defendants' initial disclosures," "it appear[ed] that the discovery disputes ha[d] been resolved." (Doc. 61.) Thus, Judge Willett denied the motion to compel as moot. (*Id.*)

On November 8, 2022, Plaintiffs filed a motion for reconsideration explaining that the motion to compel was "not moot as to the State of Arizona which, to date, ha[d] still not served an initial disclosure statement despite the deadline passing more than five months ago. Indeed, the State of Arizona didn't even bother to respond to Plaintiffs' motion to compel." (Doc. 62.)

On November 9, 2022, Judge Willett ordered the State to show cause, by November 16, 2022, why the Court should not vacate the order denying the motion to compel as moot and grant that motion (as well as the motion for summary disposition) as to the State. (Doc. 64.)

On November 16, 2022, the State filed a response to the order to show cause. (Doc. 67.) In a nutshell, the State agreed that the November 7, 2022 order should be vacated but provided various reasons why Plaintiffs' motion to compel (and motion for summary disposition) should not be granted. (Doc. 67.)

On November 23, 2022, Plaintiffs filed a motion for leave to reply (Doc. 69) and lodged a reply in support of their motion for reconsideration. (Doc. 70.) The reply was later accepted by the Court (Doc. 74 at 4) and filed on the docket. (Doc. 75.)

On December 2, 2022, Magistrate Judge Willett issued an order granting Plaintiffs' motion for reconsideration, vacating the November 7, 2022 order, denying Plaintiffs' motion for summary adjudication of their motion to compel, and granting in part Plaintiffs' motion to compel. (Doc. 74.) Judge Willett further authorized Plaintiffs to file an application pursuant to Federal Rule of Civil Procedure 37(a)(5) for expenses related to their motion to compel. (*Id.* at 3.)

On December 23, 2022, Plaintiffs filed an application requesting $10,353.50 in attorneys' fees. (Doc. 83.)

The State's response was due by January 6, 2023. *See* LRCiv 7.2(c). The State failed to respond by the deadline.

On January 18, 2023, Plaintiffs filed a motion to summarily grant their motion for attorneys' fees pursuant to LRCiv 7.2(i). (Doc. 85.)

On January 30, 2023, the State filed a belated motion to extend the deadline to respond to Plaintiffs' fees application. (Doc. 86.) The motion stated that defense counsel was "embarrassed and apologize[d] for the delay" and explained the reason for the delay:

> On the Saturday following Thanksgiving, the undersigned got acutely ill with what turned out to be COVID. Counsel was ill for nearly two weeks. Upon visiting with his doctor in the second week of December, counsel advised of difficulties he was having recalling even the most mundane of things. Counsel also could not smell or taste anything. Though the acute symptoms associated with viral infections, like fever, chills, etc. abated considerably by the middle of the second full week of December, the memory issues, lack of taste or smell, had not.
>
> During the middle of the third week of December, counsel learned his paralegal contracted COVID and was home where she remained for the rest of the year. Counsel became acutely ill again with flu-like symptoms and was unable to work as normal the remainder of that week and into the next. Because the undersigned and his paralegal are the only members of the undersigned's work group, the undersigned reviewed emails daily and calendared items in the absence of his paralegal.
>
> When undersigned counsel saw Plaintiffs' Motion for Summary Determination (Doc. 85), the undersigned had no recollection of having seen the earlier filed Application for Fees. In fact, he was certain his firm had not received the same. Upon investigating the matter, the undersigned was surprised that he had not only been aware that the Application was delivered on December 23, 2022, but he, himself had opened the notice from the federal court, as well as opening the actual attachment. It appears that the undersigned logged onto his computer for a short time on December 23, 2022, and looked at the federal court filing along with 4 superior court filing

- 3 -

> matters. The federal court filing was the earliest of the 5 filings. It was also the only one that required a due date to be calendared.
>
> Generally, counsel's paralegal logs due dates in the calendar with a notice to counsel concerning the same. When she is not available, counsel will log the due dates. Counsel has no memory whatsoever as to reviewing any of the noted 5 notices, but hazards to guess that he read the federal court notice, moved on and read the 4 state court notices and, by the time he was done, had forgot the contents of the federal court notice as well as the need to log the due date. What is also odd, and concerning to the undersigned, while he opened the Application, he did not save it to the electronic filing system which has been his routine for 20 plus years.
>
> The gravity of this misadventure is not lost on counsel who has employed more assistance in ensuring all due dates are properly logged and information received is maintained properly. Counsel was advised by his physician to wait a couple months before scheduling a neurological visit absent some acute event. Though counsel believes he has recovered more of his cognitive ability, he does intend to visit a neurologist and have his baseline memory abilities tested.

(Doc. 86 at 1-3.) The State expressed an intention to finish drafting the objections and send them to Plaintiffs later that day and asserted that it would file its objections to Plaintiff's fees application "[u]pon notice of an extension." (*Id.* at 3.)

That same day, the State filed a response opposing Plaintiff's motion for summary disposition, cross-referencing its motion to extend the deadline to respond to the fees application. (Doc. 87.)

On February 2, 2023, Plaintiffs filed a reply in support of their motion for summary disposition of the fees application, stating that "Plaintiffs waited patiently for 12 days before filing their motion for summary disposition," noting that the State did not file its response or motion for extension of time for an additional 12 days after Plaintiffs sought summary disposition, asserting that Plaintiffs have not received the State's objections to their fees request, and noting a prior instance when the State failed to respond to a motion. (Doc. 88.)

On February 24, 2023, Judge Willett granted Plaintiff's motion for summary disposition and summarily granted Plaintiffs' fees application. (Doc. 92.)

On March 10, 2023, the State filed the pending motion for reconsideration, which specifies that it was "brought pursuant to LRCiv. 7.2(g)(1)" and "and requests the District

Court Judge currently assigned to this matter to reconsider" Judge Willett's February 24, 2023 order. (Doc. 94.)

On March 14, 2023, Judge Willett referred the pending motion for reconsideration to the undersigned judge based on the State's request that "the District Court Judge currently assigned to this matter" resolve the motion. (Doc. 96.)[1]

## DISCUSSION

I.  Standard Of Review

Although the State filed a "motion for reconsideration," which specifies that it was "brought pursuant to LRCiv. 7.2(g)(1)," that is not the proper vehicle for seeking a district judge's review of a magistrate judge's decision in a matter that has been referred to a magistrate judge for all pretrial proceedings. "Typically, a motion for reconsideration is made to the same judge who issued the initial ruling, with one of the parties attempting to persuade that judge to reconsider his [or her] decision." *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 454 F. Supp. 3d 1040, 1045 (D. Or. 2020). Less typical is a scenario in which a judge "in the role of 'successor judge'" is "asked to reconsider a ruling made by a previous judge." *Id.* Each of those scenarios has its own legal standard, *id.*, but neither is applicable here. Rule 72(a) sets forth the applicable standard when a party seeks a district judge's review of a magistrate judge's decision on a non-dispositive matter, which is what the State seeks here. Thus, although the State styled its request as a "motion for reconsideration," the Court construes it as objections under Rule 72(a).

Under Rule 72(a), when a magistrate judge issues an order resolving a non-dispositive motion, "[a] party may serve and file objections to the order within 14 days after being served," after which "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.* "The clearly erroneous standard applies to the magistrate judge's factual findings . . . [while] the contrary to law standard applies to the magistrate judge's

---

[1] The Court apologizes for the delay in resolving the State's motion, which was due to an oversight.

- 5 -

legal conclusions, which are reviewed de novo." *Morgal v. Maricopa Cnty. Bd. of Supervisors*, 284 F.R.D. 452, 458 (D. Ariz. 2012) (cleaned up). "Review under the clearly erroneous standard requires considerable deference; the findings . . . stand unless the [reviewing] court has the definite and firm conviction that a mistake has been committed." *Ambassador Hotel Co., Ltd. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1024 (9th Cir. 1999) (citation and internal quotation marks omitted).

II.   Legal Standard

Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." As the Supreme Court has emphasized, the ordinary meaning of the word "neglect" in this context[2] encompasses carelessness: "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993). *See also* 2 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 6, at 143 (2022) ("At one time, some courts required that the party who missed the deadline be blameless . . . . The Supreme Court rejected that view . . . .").

Whether the neglect is "excusable" is a flexible standard, "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer,* 507 U.S. at 395. At a minimum, courts assessing whether neglect is "excusable" must consider four factors: "[1] the danger of prejudice to the [non-moving party], [2] the

---

[2]   Although *Pioneer* analyzed Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure, the Court analyzed the phrase "excusable neglect" as it appears in various contexts and specifically noted that that Rule 9006(b)(1) "was patterned after" Rule 6(b) of the Federal Rules of Civil Procedure. *Pioneer*, 507 U.S. at 391. The *Pioneer* test applies in the context of Rule 6(b)(1)(B), as well as Rule 60(b) of the Federal Rules of Civil Procedure and Rule 4(a)(5) of the Federal Rules of Appellate Procedure. *Briones v. Riviera Hotel & Casino*, 116 F.3d 379, 381-82 (9th Cir. 1997). *See also Pincay v. Andrews*, 389 F.3d 853, 854-55 (9th Cir. 2004) ("The Court in *Pioneer* established a four-part balancing test for determining whether there had been 'excusable neglect' within the meaning of Federal Rule of Bankruptcy Procedure 9006(b)(1). The Court also reviewed various contexts in which the phrase appeared in the federal rules of procedure and made it clear the same test applies in all those contexts.").

length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.*  Failure to consider all four factors, and any other factors appropriate to the case at hand, constitutes an abuse of discretion. *Lemoge v. United States*, 587 F.3d 1188, 1192-93 (9th Cir. 2009).  No single factor is determinative. *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224 (9th Cir. 2000); *Briones v. Riviera Hotel & Casino*, 116 F.3d 379382 n.2 (9th Cir. 1997).  Although "the weighing of *Pioneer*'s equitable factors must be left to the discretion of the district court in every case," *Mendez v. Knowles*, 556 F.3d 757, 765 (9th Cir. 2009) (internal quotation marks omitted), the court's conclusion must be supportable by the balance of all of the factors. *M.D. by & through Doe v. Newport-Mesa Unified Sch. Dist.*, 840 F.3d 640, 643 (9th Cir. 2016), *as amended* (Nov. 18, 2016).

When assessing whether a failure to act was caused by "excusable neglect," a court may not impose per se rules of any sort. *Pincay v. Andrews*, 389 F.3d 853, 855-60 (9th Cir. 2004) (en banc) ("We now hold that per se rules are not consistent with *Pioneer . . . .*"). There can be "no rigid legal rule against late filings attributable to any particular type of negligence." *Id.* at 860.  Even when the reason for the delay is weak, where the equities favor excusing the negligence, the court must do so. *Bateman*, 231 F.3d at 1224 (reason for delay was travel, jet lag, and the time it took to sort through mail).

Once a court has considered and weighed all four *Pioneer* factors, and any other factors it deems appropriate on a case-by-case basis, the court has broad discretion to grant or deny the motion. *Pincay*, 389 F.3d at 859 ("[T]he decision whether to grant or deny an extension of time . . . should be entrusted to the discretion of the district court because the district court is in [the best position] to evaluate factors such as whether the lawyer had otherwise been diligent, the propensity of the other side to capitalize on petty mistakes, the quality of representation of the lawyers . . . , and the likelihood of injustice if the appeal was not allowed.").

…

III. Analysis

As noted, Rule 72(a) provides that when a party files objections to a magistrate judge's ruling on a non-dispositive matter, the district court reviews any challenged factual findings pursuant to the deferential "clearly erroneous" standard and reviews any challenged legal conclusions *de novo*. An initial difficulty here is deciding how, exactly, those standards apply to the State's objections. If the underlying order contained specific factual findings as to each *Pioneer* factor—such as, for example, a finding that the first *Pioneer* factor weighed against the State's request for relief due to the danger of prejudice to Plaintiffs—there is a strong argument the clearly erroneous standard would apply to each such finding. However, the underlying order does not expressly analyze any of the four *Pioneer* factors or explain how the balancing analysis as to those factors was conducted. Instead, it simply provides: "After considering the relevant factors, the Court does not find excusable neglect for Defendant State of Arizona's failure to timely respond to Plaintiffs' Application." (Doc. 92 at 3.) At any rate, even assuming the clearly erroneous standard applies to the implicit factual findings that gave rise to the challenged ruling, the Court concludes the State is entitled to relief.

The Court first considers the danger of prejudice to Plaintiffs. This factor weighs in favor of the State. The fee application includes the standard materials applicable to a lodestar analysis. Whatever objections the State might assert will address the materials already submitted. The traditional concerns regarding prejudice (*e.g.*, potential for lost evidence, fading memories of witnesses) are not at issue here. The only prejudice Plaintiffs can claim is the loss of a "quick but unmerited victory," which is not a cognizable form of prejudice in this context. *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1262 (9th Cir. 2010); *Newport-Mesa*, 840 F.3d at 643.

The next *Pioneer* factor is the length of the delay. The length of the delay *caused by the State* was 24 days—the response should have been filed on January 6, 2023 (Doc. 83) and the State moved for an extension on January 30, 2023, promising to file the objections immediately "[u]pon notice of an extension" (Doc. 67). Had Plaintiffs

stipulated to the late filing, the progress of the briefing on the fees application would have been delayed less than a month. *Newport-Mesa*, 840 F.3d at 643 ("If anything, it was the [non-movant's] eagerness for a 'gotcha' victory that has kept the case from advancing on the merits."). *See also Ahanchian*, 624 F.3d at 1263 ("There is no better guide to professional courtesy than the golden rule: you should treat opposing counsel the way you yourself would like to be treated."). In any event, although the Court understands why Plaintiffs may have been exasperated by the State's pattern of missed deadlines, the short delay caused by the State falls within the range of delays that courts have deemed excusable. *See, e.g.*, *Pincay*, 389 F.3d at 855 (counsel filed 24 days late due to a calendaring mistake caused by a paralegal misapplying a clear legal rule); *Bateman*, 231 F.3d at 1223 (filing deadline passed on August 21 while plaintiff's counsel was out of the country; counsel returned on August 29 but did not contact the court for 16 additional days).

The next *Pioneer* factor is the reason for the delay. The reason here was, superficially, a calendaring error—the State's counsel neglected to calendar the response deadline. The Ninth Circuit has held that calendaring errors can constitute excusable neglect. *Ahanchian*, 624 F.3d at 1255 (district court abused its discretion by denying motion to accept late-filed brief where tardiness was caused by calendaring error); *Pincay*, 389 F.3d at 854–55 (affirming district court decision to accept late filing due to a paralegal's calendaring error); *Washington v. Ryan*, 833 F.3d 1087, 1099 (9th Cir. 2016) ("[W]here other factors counsel relief, a calendaring mistake and related failure to catch that mistake is no bar to [relief under the *Pioneer* test]."); *see also Los Altos El Granada Investors v. City of Capitola*, 583 F.3d 674, 683 (9th Cir. 2009) (the deadline was never calendared due to turnover in the calendaring clerk position). Certainly, a pattern of missed deadlines caused by calendaring errors can be a greater cause for concern, as would the absence of any reliable calendaring system whatsoever. *Harvest v. Castro*, 531 F.3d 737, 747 (9th Cir. 2008) (neglect not excusable where it was "systemic"). Here, the State had missed a previous filing deadline. Two missed deadlines may be more culpable than one,

but a two-strikes-you're-out approach to excusable neglect appears to run afoul of the Ninth Circuit's admonition against "per se rules of any sort." *Pincay*, 389 F.3d at 855-60. Furthermore, the calendaring error at issue here—the one relating to the fees application response deadline—was not the product of simple inadvertence. It was the result of serious illness resulting in temporary cognitive loss. Calendaring errors are generally excusable even when negligent, but the calendaring error here appears to have been due to circumstances beyond the State's counsel's control.[3]

The final *Pioneer* factor is whether the movant acted in good faith. The Court cannot conceive of any possible practical advantage the State could have hoped to gain in bad faith by allowing the deadline to file a response to the fees application to lapse by 24 days. There has been no suggestion that the 24-day delay could have somehow benefitted the State financially or in any other manner. Rather, failing to respond endangered the State's opportunity to contest a large fee request. Not only is there no evidence of bad faith, there is not even any imaginable bad-faith motive here. At worst, the calendaring mistake "resulted from negligence and carelessness, not from deviousness or willfulness," *Lemoge*, 587 F.3d at 1197, although it seems to the Court that the mistake resulted from personal misfortune that cannot even be termed "negligence and carelessness."

The Court finds that all of the *Pioneer* factors weigh in favor of granting the motion. No factors weigh against granting the motion.

Accordingly,

**IT IS ORDERED** that the State's "motion for reconsideration" (Doc. 94), which the Court has construed as Rule 72(a) objections, is **granted**. The February 24, 2023 order denying the motion for extension of time and summarily granting the fees application (Doc. 92) is **vacated**.

**IT IS FURTHER ORDERED** that the State's motion for extension of deadline

---

[3] Judge Willett is more intimately acquainted with the facts of this case, including the conduct of the parties and their counsel, and if Judge Willett had made an adverse credibility determination, it would be reviewed deferentially. But the order did not make a finding of fact as to whether the State's counsel's description of his illness should be credited, and the undersigned judge credits it.

(Doc. 86) is **granted**. The deadline for the State to file an objection to Plaintiffs' fees application (Doc. 83) is extended to **October 31, 2023**. Plaintiffs may file a reply by **November 7, 2023**. This matter remains referred to Judge Willett, who will rule on the again-pending fees application.

Dated this 17th day of October, 2023.

Dominic W. Lanza
United States District Judge